IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JONATHAN RUSSO,** : | CIVIL ACTION NO. 1:25-CV-1420 |
| : | |
| **Plaintiff** : | (Judge Neary) |
| : | |
| v. : | |
| : | |
| **FOOD SERVICE** : | |
| **DIRECTOR PEREZ,** *et al.*, : | |
| : | |
| **Defendants** : | |

**MEMORANDUM**

This is a prisoner civil rights case in which plaintiff alleges that defendants employed by the Adams County Adult Correctional Complex ("ACACC") violated his civil rights by tampering with his food. As explained below, the case will be dismissed with prejudice pursuant to a screening review under 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A.

**I.  Factual Background & Procedural History**

Plaintiff Jonathan Russo originally filed the claims in this case in another case before this court on March 15, 2025, and the court received and docketed his complaint in the original case on March 19, 2025. See Russo v. Hileman, No. 1:25-CV-503 (filed Mar. 19, 2025). On July 31, 2025, the court found that the claims in the original case were misjoined in violation of Federal Rule of Civil Procedure. See id., Docs. 10-11. To remedy this misjoinder, plaintiff's claims arising from the alleged use of excessive force by defendant Vandergrift were allowed to proceed under the original docket number, several other claims were dismissed without prejudice to Russo's right to file them in new lawsuits, and the instant case and two other claims

were severed into new cases. Id. In the interest of judicial economy, however, the court dismissed the claims in the severed cases on their merits, finding that they did not state a claim upon which relief could be granted. Id. With respect to the claims that have been severed into this case—which assert civil rights claims based on alleged food tampering—the court concluded that Russo had not stated a claim for violation of his civil rights because he had not adequately alleged the personal involvement of the only defendant named with respect to the alleged food tampering and because he had not alleged a serious medical need that could support a claim for deliberate indifference against the defendants who allegedly treated him after the incident. The court accordingly required Russo to file an amended complaint in the instant case and either pay the filing fee for the case or move for leave to proceed *in forma pauperis*. Id.

Russo timely filed an amended complaint and a motion for leave to proceed *in forma pauperis* in the instant case on August 26, 2025. (Docs. 4, 6). According to Russo's amended complaint, he was "denied cookies" on his dinner tray on February 26, 2023. (Doc. 4 ¶ 3). He then found an "actual wooden stick" on his dinner tray, which was "taken away and disposed of" by a correctional officer. (Id. ¶ 4). When prison officials replaced the meal, they purportedly did not give him a "sufficient amount or equal" to the amount that had been disposed. (Id. ¶ 5). The next day, Russo purportedly ingested metal that had allegedly been placed in his food. (Id. ¶ 6). When he reported it to officers, they took pictures of the food and then threw it away. (Id. ¶ 7). "At that point," the complaint alleges, Russo "believed that he was being targeted or that something was wrong in the kitchen." (Id. ¶ 8).

2

Russo submitted multiple sick calls complaining of stomach pain and that he was scared to defecate after consuming metal. (Id. ¶ 9).

On March 6, 2023, Russo "finally used the bathroom," and a correctional officer took photographs of the "metal and blood" in his stool. (Id. ¶ 10). Russo was then ordered to submit three stool samples to the medical department. (Id. ¶ 11). Defendant "Chelsie," a doctor in the prison, allegedly became frustrated after reviewing the first two samples and asking Russo questions and then purportedly disregarded the third sample. (Id. ¶ 12). Chelsie allegedly failed to submit lab tests on the stool samples. (Id. ¶ 14). Russo continued to experience pain and submitted a request for a sick call. (Id. ¶ 15). Defendant Eckenrode, a nurse, responded to his request and asked him, "well, what do you want me to do?" (Id. ¶ 16). Russo stated that he "didn't know" because he was not a doctor and that he expected her to know. (Id. ¶ 17). Eckenrode allegedly had him removed from the medical department and did not give him any pain relievers. (Id. ¶ 18). Chelsie and Eckenrode never followed up with Russo about further medical care after this appointment. (Id. ¶ 19).

Russo filed a grievance about the alleged food tampering. (Id. ¶ 20). Defendant Perez, the prison's food services director, allegedly instructed Russo to "follow proper protocol" if he found foreign substances in his food. (Id.) The amended complaint asserts that contrary to Perez's statement, Russo did follow proper procedure when he found the foreign objects in his food. (Id.) Due to Perez's response, Russo came to believe that Perez is "incompetent in doing his job." (Id. ¶

3

21). Defendant Snyder later accused Russo of tampering with his own food to get more food. (Id.)

The amended complaint asserts that all defendants were deliberately indifferent to a risk of harm to Russo in violation of his constitutional rights. (Id. ¶ 25). Russo seeks declaratory relief, injunctive relief, and damages.

## II. Legal Standard

The Prison Litigation Reform Act authorizes a district court to review a complaint in a civil action in which a prisoner is proceeding *in forma pauperis* or seeks redress against a governmental employee or entity. See 28 U.S.C. § 1915(e)(2);[1] 28 U.S.C. § 1915A.[2] The court is required to identify cognizable claims

---

[1] 28 U.S.C. § 1915(e)(2) provides:

**(2)** Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
    **(A)** the allegation of poverty is untrue; or
    **(B)** the action or appeal—
        **(i)** is frivolous or malicious;
        **(ii)** fails to state a claim on which relief may be granted; or
        **(iii)** seeks monetary relief against a defendant who is immune from such relief.

[2] 28 U.S.C. § 1915A provides:

**(a) Screening.**--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
**(b) Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
    **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

In screening claims under Sections 1915A(b) and 1915(e)(2)(B), the court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Coward v. City of Philadelphia, 546 F. Supp. 3d 331, 333 (E.D. Pa. 2021); Smith v. Delaware, 236 F. Supp.3d 882, 886 (D. Del. 2017). This standard requires the court to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts

---

**(2)** seeks monetary relief from a defendant who is immune from such relief.

are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### III. Discussion

Russo's federal constitutional claims are filed pursuant to 42 U.S.C. § 1983. Section 1983 creates a cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation. Jutrowski v. Twp. of

Riverdale, 904 F.3d 280, 289 (3d Cir. 2018). The defendant's personal involvement cannot be based solely on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, for a supervisor to be liable for the actions of a subordinate, there must be allegations of personal direction or actual knowledge and acquiescence. Id. A defendant's after-the-fact review of a grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's rights. Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020).

Russo's food tampering claim sounds in deliberate indifference to a substantial risk of serious harm. Because he was a pretrial detainee at the relevant time, the claim proceeds under the Fourteenth Amendment rather than the Eighth Amendment. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581-82 (3d Cir. 2003). For deliberate indifference claims, however, the Fourteenth Amendment and Eighth Amendment standards are the same. Id. To state a deliberate indifference claim, a plaintiff must allege that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendants were deliberately indifferent to that risk; and (3) the defendants' deliberate indifference caused him harm. Williams v. Sec'y Pa. Dep't of Corrs., 117 F.4th 503, 514 n.58 (3d Cir. 2024).

Russo's deliberate indifference claim will be dismissed. He has simply failed to cure any of the pleading defects that were identified in the court's prior opinion. Russo again names Perez as the only defendant allegedly involved in the alleged tampering with his food, but fails to allege Perez personally placed foreign objects in Russo's food, directed others to do so, or knew about others doing so and

7

acquiesced in the action.³ Rather, Russo appears to assert a claim against Perez solely because he held a supervisory role in the prison's kitchen and responded to Russo's grievance, neither of which is sufficient to allege his personal involvement. See Rode, 845 F.2d at 1207; Dooley, 957 F.3d at 374.

Russo similarly fails to cure the pleading defects on his claims for deliberate indifference to a serious medical need. To plead this claim, he must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale, 318 F.3d at 582 (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). Russo again fails to allege a serious medical need. Although he alleges that he had blood in his bowel movement after passing the piece of metal and that he sought medical attention, there is no indication that the bloody stool posed a serious risk of harm to him or that he needed any further medical attention after Eckenrode discharged him from the prison's medical unit.

Before dismissing a civil rights complaint for failure to state a claim, courts must permit a curative amendment unless the amendment would be inequitable or futile. Phillips, 515 F.3d at 245. The court will deny leave to amend as futile in the instant case. Russo has had multiple opportunities to state a claim upon which relief may be granted and has failed to do so.

---

³ Russo's sole attempt to plead Perez's personal involvement appears to be that Perez was "incompetent in doing his job." (See id. ¶ 21). Incompetence does not violate the Constitution.

8

**IV.     Conclusion**

For the foregoing reasons, Russo's amended complaint is dismissed with prejudice. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    August 29, 2025

9